UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

DONAIL FINLEY,

                Plaintiff,                Case No. 2:09-cv-270

v.                                         Honorable Robert Holmes Bell

KIM HILL, et al.,

                Defendants.

_____/

## **OPINION**

Plaintiff Donail Finley, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, defendants include Kim Hill, Todd Jennings, Linda Rasmussen (named as unknown Maggy, RN), Bobby Crandell, Jr., and Keith Castello, all of whom are employed at LMF. Plaintiff has also named as a defendant unknown Vining, who has not been served with a summons and complaint.

Plaintiff's complaint alleges that he had filed a grievance on January 12, 2009, claiming that RUO Hill, Vining, Jennings and Crandell jumped him on the way back from his shower and jumped him again when he was returned to his prison cell. The grievance response indicated that Plaintiff had assaulted an officer. Plaintiff was disruptive in the shower, so he was taken back to his cell. Plaintiff pulled one of the officers into his cell and needed to be further restrained. Plaintiff was provided with medical assistance after the incident. Plaintiff states that the grievance response is not true, because there was no way he could have assaulted one of the officers.

Plaintiff also grieved another instance where he claimed that defendant Castello was responsible when staff placed restraints too tightly on Plaintiff. Plaintiff states that he was hog tied like an animal. On March 3, 2009, Plaintiff filed a grievance complaining that he suffered from back pain. Plaintiff was examined by RN Maggy who told him to place a hot towel on his back. Plaintiff alleges that RN Maggy's refusal to give him pain medication and sleeping pills violated his right to receive medical care. Plaintiff alleges that his back problems got worse when he was placed in restraints. Plaintiff's grievances were denied. Plaintiff has alleged that each defendant violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff sues defendants in their individual and official capacity and asks for compensatory and punitive damages.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court

must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eleventh Amendment bars claims against defendants in their official capacities. The Eleventh Amendment bars litigants from suing a state in federal court. When a suit for damages is brought against a state official in his official capacity, the case is one against the state and is barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21 (1991). Such a suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 25 (*quoting Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, n.55 (1978)). *See also Kentucky v. Graham*, 473 U.S. 159, 165 (1985). As a result, the suit is no different from one naming the state itself. *Hafer*, 502 U.S. at 26 (*quoting Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)).

Defendants argue that they are entitled to qualified immunity from liability. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise

power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

Defendant Castello argues that he lacked personal involvement in the alleged underlying conduct. Plaintiff has sued defendant Castello because he failed to train the other officers regarding proper use of restraints. Plaintiff alleges that he spoke with Defendant Castello about the restraints used by staff members. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and

that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990). Plaintiff has clearly sued Defendant Castello because of his supervisory authority. Defendant Castello had no involvement in placing Plaintiff in restraints. Accordingly, Defendant Castello is dismissed from this action.

Defendants Hill, Jennings and Vining allegedly used excessive force against Plaintiff. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v.*

*Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.* The court must consider plaintiff's Eighth Amendment claim in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 130 S. Ct. at 1178. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Moreover, physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346.

Plaintiff alleges that Defendants jumped on him on the way back from his shower and again when he was returned to his cell, without any justifiable reason. Officers Vining and Jennings

6

escorted Plaintiff to the showers on January 5, 2009. After Plaintiff refused to comply with several verbal orders to face forward, his shower privileges were terminated. While being escorted back to his cell, Plaintiff turned toward officer Jennings and threatened to spit in his face. Officer Hill immediately grabbed Plaintiff by the back of his head in an effort to prevent Plaintiff from spitting at officer Jennings. When Plaintiff arrived at his cell door, he initially refused to enter his cell. Officer Hill administered a knee strike to the side of Plaintiff's leg. Plaintiff moved toward his cell pulling officers Hill and Vining into the cell with him. The officers tripped over Plaintiff's footlocker and fell onto the bed. Officer Jennings then went to the Control Bubble to retrieve leg irons. Plaintiff was secured to his bed and leg irons were placed on him. Plaintiff was then escorted to his cell door. The officers left Plaintiff's cell and removed Plaintiff's restraints through the cell door slots. Plaintiff was issued misconduct tickets for threatening behavior and assault and battery. Plaintiff was found guilty of both misconduct tickets after a hearing. Under these circumstances, it appears that Defendants used only a minimum amount of force in response to Plaintiff's disruptive behavior. The force was minor and limited to the amount that was necessary in order to move Plaintiff back to his cell and prevent him from harming staff.

Plaintiff claims that Defendant Rasmussen ignored his serious medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

8

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Defendant Rasmussen was not on duty when Plaintiff was placed in restraints. She was working when Plaintiff came into the clinic and complained of back pain on February 25, 2009. On that date, Plaintiff told Defendant Rasmussen that when he was placed in restraints he had to walk in a semi-crouched position due to the length of the chains. Defendant Rasmussen attests that notations in the medical record from health care staff that were working on the day that Plaintiff was in restraints indicate that Plaintiff was not "short chained," did not have to bend over, but did have

9

difficulty walking while in restraints. Defendant Rasmussen instructed Plaintiff to rest his back, apply a warm compress several times daily and to contact medical staff if his condition did not improve in one to two weeks. Defendant Rasmussen also gave Plaintiff an educational handout on backaches. Plaintiff was not referred to a doctor at that time because he did not present any abnormalities. Plaintiff was seen a number of times by health care staff for other unrelated issues between March and April. He was again seen for back pain on May 28, 2009, and provided with similar instructions by another nurse. Plaintiff was seen by a doctor on September 1, 2009, for his back pain. Plaintiff kited for back pain on October 21, 2009, but refused a callout to be seen by Defendant Rasmussen. On November 6, 2009, Plaintiff walked out of an examination with another nurse who was assessing his complaints of back pain.

It is clear, that Plaintiff has received treatment from several different staff members regarding his claim of back pain. Defendant Rasmussen assessed Plaintiff's complaints and provided her recommendations and treatment options. Defendant Rasmussen clearly did not violate Plaintiff's Eighth Amendment rights and was not deliberately indifferent to Plaintiff's claim of back pain.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, Defendants' motion for Summary Judgment (Docket #20) is granted and this case is dismissed in its entirety.

An Order and Judgment consistent with this Opinion will be entered.


Dated: February 17, 2011                    /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE